JAMES H. CARNER, APPELLEE, V. RICHARD ANDERSON, CHIEF OF THE POLICE DEPARTMENT OF OMAHA, NEBRASKA, ET AL., APPELLEES, CHRISTINE FRANCES CARNER BAGLEY, INTERVENER-APPELLANT.

215 N. W. 2d 82

Filed February 21, 1974. No. 39009.

John F. Brennan and William L. Monahan, for intervener-appellant.

Jerome P. Grossman of Grossman, Sloma, Murphy & Brown, for appellee Carner.

Heard before SPENCER, SMITH, and CLINTON, JJ., and COLWELL and HASTINGS, District Judges.

HASTINGS, District Judge.

This case involves the custody of three minor children of plaintiff and intervener. The defendants, Richard Anderson, chief of police of the City of Omaha, Donald Knowles, county attorney, and Michael McGill, deputy county attorney of Douglas County, in response to a writ of habeas corpus issued by the District Court for Douglas County on September 19, 1972, surrendered the custody of the children to the court and were thereafter dismissed from the case. Intervener was allowed to file a pleading in the nature of a petition in intervention. Custody pending trial was retained by the court with temporary possession given to plaintiff. Upon trial on the merits, the court found that a Wyoming divorce decree, which had awarded custody of the children to intervener when neither she nor the children had been present during any of the proceedings, was void as to the custody provision; that it was in the best interests and welfare of the children that their care, custody, control, and possession be granted plaintiff; and that the custody of the court should be terminated. A final decree was entered accordingly, from which intervener appeals. We affirm the judgment of the District Court.

It should be said at the outset that the evidence contained in the record is, to a certain extent, vague, indefinite, uncertain and, although not undisputed, the degree of conflict is minimal. Furthermore, although plaintiff filed a motion requesting the court to appoint an independent investigator to make a report to the court upon the background and suitability of the parties to have custody of the children, no ruling was ever made on the motion and if any court-sponsored investigation was undertaken, it does not appear of record.

Nevertheless, in deciding this case, we are committed to the doctrine set forth in the case of State v. Vogt, 190 Neb. 205, 206 N. W. 2d 849, as follows: "We have said, in cases involving child custody, the finding of the trial court both as to the evaluation of the evidence and as to the matter of custody will not be disturbed unless there is a clear abuse of discretion or the decision is against the weight of the evidence. State v. Randall, supra."

The parties, whose home was originally in Omaha, were married in Wyoming in 1962 following which were born James, Jr., Glen, and Tina, ages 9, 7, and 6 at the time this action was brought. The family returned to Omaha in about 1963.

The evidence would support a finding that marital troubles developed and intervener left the plaintiff and took the children to California to live. The plaintiff joined the Air Force but was forced to seek an early discharge because intervener told him his children were apt to end up in a home unless he returned to the States. He then took care of the children for a while, got the intervener out of the Job Corps which she had joined in the interim, following which she was found to be mentally ill on her own petition, was paroled, and left again for California without the children. Plaintiff then took the children to her, returned to Wyoming, obtained a divorce in February of 1969, was asked by intervener shortly after that to take the children, which he did, and made them a part of his new family, consisting of a wife, and later two children. Intervener returned to Omaha in the summer of 1971, visited in plaintiff's family for a week, and then, with the aid of the Omaha police to whom she displayed the Wyoming divorce decree, obtained possession of the children and took them back to California. Plaintiff then went to California a year later, found the children to be living in what he felt were intolerable conditions—the ap-

pearance of a boy friend living in intervener's household who had given the daughter Tina a "hickey" like "he did Mama," so he returned the children to Omaha. Child stealing charges were filed against him in California which prompted his arrest in Omaha and the taking of the children into protective custody by the defendants, which precipitated this action.

Intervener does not deny the basic facts, although she insists that each time plaintiff took the children, except the last time, was by her permission with the understanding that they would be brought back when requested, and denies any improper living relations with her boy friend. She stated that she did not intend to work, but would continue to live off welfare so she could be home with the children.

Plaintiff's employer testified that he managed one of their oil stations and earned around $800 per month, that he was one of their better managers, that his home was neat, and that the children appeared to be well treated and supervised.

At best, the behavior of both parties, engaging as they have in a "tug of war" over these children, is far from exemplary, and this opinion should not be construed as condoning the employment of self-help by parents to gain an advantage in settling child custody cases. However, these children have been uprooted and transplanted far too many times, which must be stopped, and regardless of foreign divorce decrees, criminal charges, or the desire of parents, the welfare of the children must be the overriding consideration. See Copple v. Copple, 186 Neb. 696, 185 N. W. 2d 846, wherein this court said: "It is the position of this court that when a court's jurisdiction is invoked by a habeas corpus petition seeking custody of a child, the child becomes a ward of the court and the prime consideration is the welfare of the child."

It is not necessary for us to decide the efficacy or

the jurisdictional validity of the Wyoming divorce decree relating to child custody as this Court also found in Copple v. Copple, *supra*: "Child custody provisions of a divorce decree entered in a sister state have no extraterritorial effect upon questions of proper custody arising under circumstances materially changed with reference to the welfare of the children."

Considering the length of time that the children have been with the plaintiff and his ability to provide proper care and the somewhat questionable stability and attitude of intervener as demonstrated by the evidence, it is our opinion that the trial court did not abuse its discretion in finding that the best interests and welfare of the children would be served by placing custody with the plaintiff, and the decree is affirmed.

AFFIRMED.

SMITH, J., not participating.