[No. 45517.   En Banc.   May 10, 1979.]

*In the Matter of the Marriage of* SUSAN MYERS,
*Appellant, and* JOHN MYERS,
*Respondent.*

*Robert P. Stephens, Norman R. McNulty, Jr.,* and *Dan Stormer* of *Spokane Legal Services Center,* for appellant.

*Thomas E. Cooney, Jr.,* for respondent.

DOLLIVER, J.—Susan and John Myers were married December 29, 1973, in Spokane County, Washington. Their two children, ages 4 and 3, were born in this state, and the parties continued to reside here for the next 3 1/2 years. On June 13, 1977, the parties separated and the children remained with Susan. Four days later, John removed the children from the care of a babysitter and departed for Kentucky with them without the consent of his wife. Susan filed a petition for dissolution of the marriage on July 7, and asked for custody of the children. The trial court dismissed the custody and support portions of the petition for lack of subject jurisdiction. The record from the trial court does not reflect an express finding that the children were domiciled in Kentucky but this appears to be the basis on which those portions of the petition were stricken. The marriage of the parties has been dissolved so the only question on this direct appeal is whether the trial court had subject jurisdiction to determine child custody, support and visitation.

We have long adhered to the domicile rule which holds the domicile of the children follows that of the parent having legal custody, and the children must be Washington domiciliaries before the courts of this state can exercise jurisdiction in disputes involving custody, support and visitation rights. *See In re Marriage of Dunkley,* 89 Wn.2d 777, 575 P.2d 1071 (1978), and cases cited in footnote 1, at page 779.

> Washington adheres to the view taken by the old Restatement [of Conflict of Laws], which treats the child's status as though it were a "res." The theory is the "res" is subject to the control or power of the state in

which the child is domiciled because the domiciliary state has the most substantial interest in the welfare of its citizens.

(Footnotes omitted.) *In re Miller,* 86 Wn.2d 712, 722, 548 P.2d 542 (1976).

Under the domicile rule, where both parents have legal custody of a child and separate to establish domiciles in different states, a child takes the domicile of the parent with whom it actually lives. *In re Burns,* 194 Wash. 293, 77 P.2d 1025 (1938). Thus, since the Myers children were living with their father who had apparently established a new domicile in Kentucky, they acquired a domicile there, and the Washington courts lacked jurisdiction to adjudicate portions of Susan Myers' petition for dissolution. Application of the domicile rule in this context places the fleeing parent in a strong tactical position. Ratner, *Child Custody in a Federal System,* 62 Mich. L. Rev. 795 (1964). To apply it here would allow John Myers to prevent final determination of the legal custody of the children until Susan Myers traveled to Kentucky and litigated the issue there.

In recent years, the domicile rule has been subject to a great deal of criticism. We have previously acknowledged that nondomiciliary contacts may, under certain circumstances, provide a basis for exercise of subject jurisdiction. In *In re Miller, supra,* we stated the domicile rule was too harsh because the technical subtleties of the concept of "domicile" were irrelevant to a custody proceeding in which the paramount concern is the child's welfare. In *In re Marriage of Saucido,* 85 Wn.2d 653, 660, 538 P.2d 1219 (1975), we said:

> We are aware that, although domicile remains a widely–recognized basis for permanent child custody jurisdiction, there is considerable support for the view there are nondomiciliary contacts with a state which may provide a sufficient basis for permanent child custody award jurisdiction . . . These nondomiciliary contacts include (1) in personam jurisdiction over the contesting parties for custody; and (2) the presence of the child in the forum.

In *In re Marriage of Dunkley, supra* at page 780, we expressed "considerable doubt that domicile should be continued as a blanket prerequisite for jurisdiction", but affirmed the trial court's declination of jurisdiction because of the doctrine of forum non conveniens. No cases have been brought to our attention where we have applied the domicile rule to deny jurisdiction to Washington courts in an original custody dispute when both parents lived their entire married life in this state. We do not do so now.

The Restatement (Second) of Conflict of Laws § 79 (1971) allows assertion of subject jurisdiction where both parents are subject to the personal jurisdiction of the forum state's courts:

A state has power to exercise judicial jurisdiction to determine the custody, or to appoint a guardian, of the person of a child or adult
    (a) who is domiciled in the state, or
    (b) who is present in the state, or
    (c) *who is neither domiciled nor present in the state, if the controversy is between two or more persons who are personally subject to the jurisdiction of the state.*

(Italics ours.) *See also Loveall v. Loveall,* 188 Neb. 457, 197 N.W.2d 381 (1972); *Potter v. Rosas,* 111 N.H. 169, 276 A.2d 922 (1971). There are a variety of interests involved in a custody matter. They include the welfare of the child, the interests of the state, and the interests of those disputing for the child's custody. But the child's welfare is paramount. Restatement (Second) of Conflict of Laws § 79, comment *a* (1971). We adopt the position of section 79(c) of the Restatement, and hold that, where both parents are personally subject to the jurisdiction of the courts of this state, the court may exercise jurisdiction to determine matters relating to the custody of their children.

In this case, jurisdiction over the absent father is obtained by virtue of Washington's long–arm statute, RCW 4.28.185. Recent amendments to that statute subject any person to the jurisdiction of this state's courts as to any cause of action arising from:

(e) The act of sexual intercourse within this state with respect to which a child may have been conceived;

(f) Living in a marital relationship within this state notwithstanding subsequent departure from this state, as to all proceedings authorized by chapter 26.09 RCW, so long as the petitioning party has continued to reside in this state or has continued to be a member of the armed forces stationed in this state.

RCW 4.28.185(1)(e), (f). Both of these acts occurred in Washington and, thus, both parents are subject to in personam jurisdiction here. We conclude, therefore, that the trial court had personal jurisdiction over the parents and that the court has subject jurisdiction to determine questions of child custody, support and visitation.

We note that the Uniform Child Custody Jurisdiction Act, 9 U.L.A., *Matrimonial, Family and Health Laws* 99 (Master ed. 1973), currently being considered by the legislature, would allow assumption of jurisdiction here. Section 3(a) of that act provides:

A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State . . .

9 U.L.A., at 106. The uniform act has now been adopted in 26 states, removing many of the obstacles to smooth and speedy resolution of interstate child custody disputes. While we are not inclined judicially to adopt this proposed legislation (*In re Marriage of Dunkley, supra*), we view favorably its approach to the troubling question of jurisdiction in these types of proceedings. *See* Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22

Vand. L. Rev. 1207 (1969); Jarrett, *Jurisdiction in Interstate Child Custody Disputes,* 12 Gonzaga L. Rev. 423 (1977); Note, *Uniform Child Custody Jurisdiction Act: An Attempt to Stop Child Rustling,* 12 Willamette L.J. 623 (1976).

The attorney for John Myers has filed a motion for attorney's fees and costs on appeal. RCW 26.09.140. After examining the facts in the case and the arguments of counsel, we believe the granting of attorney fees and costs is unjustified. Furthermore, counsel has failed to comply with RAP 18.1(c). The motion is denied.

The trial court's dismissal of portions of Susan Myers' petition for dissolution is reversed and the case is remanded for further proceedings consistent with this opinion.[1]

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., concur.

---

[1]Subsequent to the writing of this opinion, the legislature passed the Uniform Child Custody Jurisdiction Act, Laws of 1979, ch. 98.