IN RE INTEREST OF RAYMOND LOOMIS, JR., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. RAYMOND LOOMIS, SR., APPELLANT.
239 N. W. 2d 266

Filed March 4, 1976. No. 40206.

Thomas R. Wolff and Richard Jeffries, for appellant.

Donald L. Knowles and John S. Slowiaczek, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This was a proceeding brought pursuant to Chapter 43, article 2, R. R. S. 1943, to have Raymond Loomis, Jr., the minor child of Raymond Loomis, Sr., and Alice Loomis, adjudicated to be a neglected and dependent child, and to have the parental rights between the parents and child terminated. The Juvenile Court appointed guardians ad litem for the minor and for the father, and an attorney for the father. After several hearings, the court ordered that the minor, Raymond Loomis, Jr., be placed in the custody of the Douglas County social services for foster home placement, with visitation rights for the father; that the parental rights of the natural parents be taken under advisement; and that a review of said matter be held in approximately 6 months. Raymond Loomis, Sr., prosecutes this appeal.

Appellant sets out three assignments of error: (1) The Douglas County welfare department should not be allowed to act as both the benefactor of supportive services and as an investigative arm of the prosecutor's office; (2) the Juvenile Court committed reversible error in overruling the objection of appellant to photographs obtained by the Omaha police department in the home of appellant; and (3) the evidence is insufficient

to support findings of dependency, neglect, and a termination of parental rights. We affirm.

At the outset, we are met with the State's argument that the parental rights have not been terminated nor acted upon in any way. They were taken under advisement and the final action delayed for approximately 6 months. Section 25-1911, R. R. S. 1943, requires a final trial order as a prerequisite to an appeal. Section 25-1902, R. R. S. 1943, defines a final order as follows: "An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified or reversed, as provided in this chapter."

In the present action the Juvenile Court took the child out of the home, placed his custody in the Douglas County social services, and, without terminating the parental rights, took them under advisement with a review of the matter in approximately 6 months. There can be little question that the ruling herein does affect a substantial right of the appellant, who, if he is entitled to it, is deprived of the custody of his child for at least 6 months. See Ripley v. Godden (1954), 158 Neb. 246, 63 N. W. 2d 151.

Raymond Loomis, Jr., was born January 27, 1971. Immediately after his birth he was abandoned by his mother. From July 1, 1972, until February or March 1973, the child stayed with appellant's stepsister, pursuant to an arrangement with appellant and the welfare department. His custody was thereafter with the appellant until he was removed from the home by the Douglas County social service child protective unit in September 1974.

Appellant was institutionalized at the Beatrice State Home from 1952 until 1968. He is mentally retarded, with an I.Q. in the range of 50 to 70. The evidence

strongly indicates the appellant was not taking proper care of the child. A worker for the chance development center testified that she often had to bath the child, on an average of two times per week, and that it was often necessary to clean dried feces from his body. She also testified that it was not unusual for the child to return to school 2 days in succession wearing the same diaper, and that school counsellors had discussed this problem with the appellant.

The general condition of the home was extremely filthy, even when appellant was availing himself of the use of homemakers. The social workers found bottles, medication bottles with tops off, food, paper, dirty dishes, clothes, auto parts, an open paint can, and on at least one occasion cat and dog feces, as well as other general clutter.

Appellant's stepsister testified that while the child was with her from July 1972, until March 1973, appellant visited the child on only two occasions. He did not visit the child over the Christmas holidays, nor give him a present. She also testified that in December of 1973, when she observed the child he had dried feces on his body and was extremely dirty, with indentations on his ears. She also testified that she had observed the appellant strike the child and pull him by the ears.

An employee of M.U.D. testified that the water in the home was shut off May 3, 1974, and the gas was shut off August 19, 1974. Both services were resumed on October 23, 1974. During August of 1974, while these utilities were shut off, the appellant purchased an automobile with a check he received from A.D.C.

A caseworker for the Douglas County social service child protective unit, who was assigned to the Loomis case, called at that home on September 23, 1974. He was admitted by a woman whom he believed to be living in the home on that date, due to his conversation with her and the fact that he observed women's clothing in the living room and an additional bed made in the living

room. He summoned the police because of the extremely filthy condition of the home and the fact that the child was wearing a headband which was completely black due to filth. He testified he feared the child's ear might become infected due to the filth of the bandage. The police arrived and called for a photographer from the department. This police technician took the photographs admitted in evidence over the appellant's objection.

There is no merit to any of the appellant's assignments of error. The Douglas County welfare department is not an investigative arm of the prosecutor's office but acts primarily as a benefactor of supportive services. Such services are necessary under particular circumstances to protect abused or neglected persons and preserve the family environment. Inherent in the duty of a welfare worker is the responsibility to call to the attention of the proper officials any condition materially affecting the welfare of a child of tender years.

The agencies, with their supportive services, worked with appellant for more than $3\frac{1}{2}$ years in an attempt to stabilize his home atmosphere. If criticism is to be directed at the agency it is not for failure to cooperate with the appellant but rather for permitting the dangerously unsanitary conditions to continue so long.

There is no merit to appellant's second assignment, and as to the third, the evidence is more than sufficient to support the action. The questions we raise on the record before us is why an order of dependency and neglect was not entered and why it was necessary to continue the matter for an additional 6 months to reach a decision on the termination of parental rights.

While every effort should be made to protect the rights of parents to their children, the public also has a paramount interest in the protection of the rights of those children. The right of parental control is a natural, but not an inalienable right. Here, the father is mildly mentally retarded. The conditions of the home

over a long period were filthy and dangerously unsanitary. The appellant has been living with a woman not his lawful spouse, who, because of employment away from the home, was too tired to attempt to remedy conditions or care for the child. Coupling these facts with the fact the child bore every indication of extreme neglect, it would seem necessary that the court first consider the welfare of the child rather than the natural right of the parent.

The first and primary consideration in any case involving the custody of a child is the best interest of the child. Bigley v. Tibbs (1975), 193 Neb. 4, 225 N. W. 2d 27.

If there is any criticism of the decision herein, it is for failure to take decisive action. We affirm the judgment and remand the cause with directions that the matter under advisement be quickly determined.

AFFIRMED AND REMANDED WITH DIRECTIONS.

CLINTON, J., concurring in the result only.

I concur in the result only in this case. I disagree with what I consider the gratuitous criticism of the action of the juvenile judge in taking under advisement the matter of the termination of parental rights. I wish to make two points. First, decisions on such matters are of great importance and a procedure which may help to preserve a family ought to be encouraged. However clearcut this case may seem to the writer of the opinion based wholly upon the cold record, it may not be so clear to one who has had direct contact with the parties and the witnesses. Second, it is not our function as an appellate court to decide issues which are not before us. The expression of opinion on the failure of the court to terminate parental rights is therefore inappropriate and mere dictum because the trial court has entered no order on that matter.